UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HAM IV REALTY, LLC,

    Plaintiff,

vs.

USROOFCOATERS, INC., and CASTAGRA
PRODUCTS, INC.,

    Defendants,

CASTAGRA PRODUCTS, INC.,

    Third Party Plaintiff,

vs.

JOHN CHRISTINA,

    Third Party Defendant.

Case No. 3:22-cv-30142-MGM

<u>MEMORANDUM AND ORDER REGARDING CASTAGRA PRODUCT INC.'S MOTION
FOR PROTECTIVE ORDER</u>
(Dkt. No. 56)

ROBERTSON, U.S.M.J.

On or around May 13, 2024, defendant USRoofcoaters, Inc. ("USR") served a notice of

taking the deposition of attorney Keith McClellan ("McClellan"), general counsel of defendant

and third-party plaintiff Castagra Products, Inc. ("Castagra") (Dkt. No. 56-1). Before the court is

Castagra's motion seeking a protective order barring McClellan's deposition on the grounds that

taking the deposition would call for the disclosure of privileged attorney-client communications

and information protected by the work product doctrine and that, aside from his involvement in

the instant litigation, McClellan does not have information relevant to the case. For the reasons

set forth below, Castagra's motion is granted, without prejudice to USR renewing its request for McClellan's deposition by motion if circumstances so warrant.

I.    <u>Relevant Background</u>

According to its Second Amended Complaint, plaintiff Ham IV Realty, LLC ("Ham IV") owns commercial property in Wilbraham.  In or around early 2021, Ham IV sought a roofing professional to remediate problems with its building's roof while minimizing disruption to its tenants (Second Amended Complaint ("SAC"), ¶¶ 7-9).  Ham IV contracted with USR to repair and waterproof the roof of the building using a product called Ecodur, which was distributed by Castagra (SAC, ¶¶ 15, 19).  After the work was completed, Castagra issued a 10-year materials warranty to Ham IV (SAC, ¶ 32).  Ham IV alleges that USR's work was poor and that, beginning in or around November 2021, the newly repaired roof began leaking (SAC, ¶¶ 31-32).  USR blamed the problems on Ecodur and pointed the finger at Castagra, the source of the Ecodur (SAC, ¶¶ 38-39).  Ham IV also alleges that Castagra shares responsibility for the problems with USR's repairs to the Ham IV building roof, asserting that Castagra's Ecodur product has a history of failures (SAC, ¶ 44).  Ham IV has asserted breach of contract, negligence, fraud, breach of warranty, and Chapter 93A claims against USR and/or Castagra (SAC, ¶¶ 62-116).  For its part, USR has filed a crossclaim against Castagra seeking contribution and indemnification and declaratory relief (Dkt. No. 30), and Castagra has filed a third-party complaint against John Christina, who, according to Castagra, was in charge of the roofing repair work at Ham IV's building (Dkt. No. 49, ¶ 10) and from whom Castagra seeks contribution and indemnification (Dkt. No. 49, ¶¶ 18-24).

While the record is not clear on this point, USR represents that it believes that McClellan began working for Castagra as its general counsel in early 2023 (Dkt. No. 59 at 4).  According to

McClellan's affidavit filed in support of Castagra's motion for a protective order, he did not become aware of the sale of Ecodur to USR until February 2, 2023 (Dkt. No. 56-2, ¶ 2).  He did not have any role in the sale of Ecodur to USR, or in the training provided by Castagra to the individuals who applied the Ecodur to Ham IV's building, all of which occurred before he began work at Castagra (Dkt. No. 56-2, ¶¶ 3-5).

McClellan admittedly participated in preparing Castagra's responses to USR's Keeper of Records deposition subpoenas (Dkt. No. 56-2, ¶ 6).  According to USR, McClellan authored Castagra's communications with USR about Castagra's responses to USR's subpoenas duces tecum.  Those responses, USR alleges, advanced positions designed to conceal the existence of warranty claims against Castagra in anticipation of a possible sale of the company (Dkt. No. 59 at 7).  USR seeks to depose McClellan to inquire about his role in responding to the subpoenas duces tecum USR served on Castagra, his knowledge about ongoing acquisition talks with potential buyers of Castagra or its assets, and changes he initiated to documents used by Castagra such as contracts and warranties.

II.      Applicable Legal Principles and Standard of Review

As an initial matter, USR's assertion that the relief sought by Castagra is extraordinary (Dkt. No. 59 at 6) is simply not accurate.  A number of sessions of this court have addressed the question of whether, and if so in what circumstances, a party should be permitted to take the deposition of an opposing party's attorney, including that party's in-house attorney, and have granted the relief now sought by Castagra, particularly when the party seeking to take the deposition has not demonstrated that it has exhausted other potential sources of information before seeking to depose the opposing party's attorney.  *See Bassett v. Tempur Retail Stores, LLC*, Civil Action No. 22-cv-11127-NMG, 2024 WL 3416221, at *3 (D. Mass. July 15, 2024);

*Rain v. Conn. Gen. Corp.*, Civil Case No. 3:17-30115-MGM, 2022 WL 2294061, at \*4 (D. Mass. June 23, 2022); *Weinreich v. Brooks*, Civil Action No. 21-10496-NMG, 2022 WL 2373796, at \*4 (D. Mass. Apr. 4, 2022); *Petrosyan v. Maserati N. Am., Inc.*, Civil Action No. 19-12425-DJC, 2020 WL 8458123, at \*3 (D. Mass. Nov. 18, 2020); *Abiomed Inc. v. Maquet Cardiovascular LLC*, Civil Action No. 1:16-10914-FDS, 2017 WL 11625640, at \*3 (D. Mass. Oct. 6, 2017); *see also Brown v. St.-Gobain Performance Plastics Corp.*, Civil No. 16-cv-242-JL, 2022 WL 122609, at \*2-3 (D.N.H. Jan. 7, 2022).  USR has not acknowledged any of this authority which, while not binding on this court (although the *Rains* decision was issued by this court), is on-point and persuasive, and it has not cited to any legal authority in support of its position.

Federal Rule of Civil Procedure 26 provides, in pertinent part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "Further, Rule 26 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'"  *Valentin v. Town of Natick*, 343 F.R.D. 452, 456 (D. Mass. 2023) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  "[R]eported decisions warn that 'allowing depositions of opposing counsel … may disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients,' can 'create a unique opportunity for harassment,' and 'carry the substantial potential of spawning litigation over collateral issues[.]'"  *Id.* (alterations in original) (quoting *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-82 (D.D.C. 2011) (citations omitted) (collecting cases)).

> In deciding whether a deposition of opposing counsel, including in-house counsel, is appropriate, courts often use the test adopted by the Eighth Circuit in *Shelton v.*

4

*American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).  *See Dunkin' Donuts, Inc.*
*v. Mandorico, Inc.*, 181 F.R.D. 208, 210 (D.P.R. 1998).  Under that test,
depositions of opposing counsel should be limited to where the party seeking to
take the deposition has shown that (1) no other means exists to obtain information
other than to depose opposing counsel; (2) the information sought is relevant and
non-privileged; and (3) the information is crucial to the preparation of the case.
*Shelton*, 805 F.2d at 1327 (citation omitted).  The crucial factor in determining
whether the *Shelton* test applies is the extent of the lawyer's involvement in the
pending litigation.  *Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co.*, No. A-09-711-
LY, 2010 WL 5174366, at *3 (W.D. Tex. Dec. 13, 2010); *see also Desert Orchid*
*Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 220 (D.
Neb. 2006).

*Abiomed Inc.,* 2017 WL 11625640, at *2 (footnote omitted).[1]

As to relevance, a party litigating whether it is entitled to seek discovery from an

opposing party "bears the initial burden of showing the relevance of the information sought."

*Chr. Hansen HMO GMBH v. Glycosyn LLC*, No. 22-cv-11090-NMG, 2024 WL 2111499, at *2

(D. Mass. May 10, 2024) (citing *DMO Norwood LLC v. Kia Am., Inc.*, 691 F. Supp. 3d 252, 257

(D. Mass. 2023)).  "For requested materials to be discoverable, they must be both 'relevant to

any party's claim or defense and proportional to the needs of the case.'"  *Id.* (quoting Fed. R.

Civ. P. 26(b)(1)).

    III.    Discussion

Castagra argues that the topics on which USR proposes to elicit testimony from

McClellan would call for the disclosure of information protected by the attorney-client privilege

and the attorney-work product doctrine and that USR seeks information from McClellan that is

not relevant to the claims asserted against Castagra by USR or Ham IV.  Accepting that the most

crucial factor under the *Shelton* test is the potential lawyer-deponent's involvement in the

---

[1] The court in *Abiomed* observed that the First Circuit has not explicitly adopted the *Shelton* test
but has used a similar test for purposes of deciding whether opposing counsel can be required to
testify at trial.  *Id.*, 2017 WL 11625640, at *2 n.3 (citing *Bogosian v. Woloohojian Realty Corp.*,
323 F.3d 55, 66 (1st Cir. 2003)).

pending litigation, the court turns to this issue first.  Ham IV alleges that Castagra's product – Ecodur – was defective in breach of express and implied warranties, that Ecodur was negligently designed, and that Castagra was negligent in failing to provide adequate training in the use and application of Ecodur for the individuals who repaired the roof on the Ham IV building and in assisting with the response to the leaks that developed after the roof was supposedly repaired (SAC, ¶¶ 98-106, 108-110; 112-116).  As to USR's claims against Castagra, USR asserts that Ecodur was not fit for its intended purpose and that an indemnification provision in the agreement between USR and Castagra should not apply (Dkt. No. 30, ¶¶ 13-14, 22, 23).

USR has not shown, or tried to show, that McClellan has personal knowledge within the relevant timeframe about facts related to the claims Ham IV and USR have asserted against Castagra.  As a lawyer, McClellan would not be expected to have personal knowledge about whether Ecodur is suitable for the purpose for which was marketed or used, nor would he be expected to have knowledge about the content or delivery of training for individuals using Ecodur.  This is particularly the case where USR has represented that McClellan was not employed by Castagra when Ham IV hired USR to repair the roof of its building.  Instead, USR argues that it is entitled to depose McClellan to ask about his decisions regarding Castagra's responses to written discovery seeking information about litigation pending against Castagra, his knowledge about Castagra's communications with potential purchasers, and his work revising Castagra's distribution agreements and the terms of its warranties (Dkt. No. 59 at 7).

Castagra contends that evidence about a discovery dispute concerning Castagra's production of information about other breach of warranty claims related to Ecodur's performance is not relevant the parties' claims and defenses and, therefore, is not an appropriate subject of inquiry to McClellan.  The court agrees.  USR has not pointed to any authority for the

proposition that evidence about a discovery dispute that was resolved before Castagra's Rule 30(b)(6) deposition commenced would be admissible at trial for any purpose. USR has not shown that Castagra's interest in identifying a purchaser – assuming such an interest exists – is connected to Ecodur's effectiveness overall, its suitability for this particular project, the quality of Castagra's training for Ecodur users, or USR's right to indemnification or contribution. While there might be some case in which evidence of a party's reluctance to turn over information in discovery might be admissible or calculated to lead to the discovery of admissible evidence, USR's threat to use this evidence to paint Castagra as the culprit does not pass muster, particularly where Castagra produced the evidence at issue, before its Rule 30(b)(6) deposition without the need for court intervention. *See, e.g., Close v. Account Resolution Servs.*, 557 F. Supp. 3d 247, 251 (D. Mass. 2021) (holding that speculation that settlement agreements might have been entered into in bad faith and might show collusion was insufficient to justify discovery).

Castagra's reliance on the attorney-client privilege and the work product doctrine as a basis for seeking a protective order is also well-taken. "'The attorney-client privilege … protects communications made between an attorney and a client for the sake of obtaining legal advice' and 'extends to communications made to a representative of the attorney for the sake of obtaining the attorney's advice.'" *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47 (D. Mass. 2007) (alteration in original) (quoting *City of Worcester v. HCA Mgmt. Co., Inc.*, 839 F. Supp. 86, 88 (D. Mass. 1993)). "The work product doctrine, codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides that items prepared in anticipation of litigation are generally protected from discovery by an opposing party." *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (citing Fed. R. Civ. P. 26(b)(3)). "[O]nly work done in

anticipation of or for trial … is protected." *U.S. ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020). "Rule 26(b)(3) establishes two tiers of protection. Fact work product is discoverable only upon a showing of 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without undue 'hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. at 381 (quoting Fed. R. Civ. P. 26(b)(3)). "'Core' or 'opinion' work product, which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection." *Id.* (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003)). "Opinion work product is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Id.* at 382 (quoting *In re Cendant*, 343 F.3d at 663).

Establishing the scope of protection under the attorney-client privilege and work product protection for in-house counsel can be complicated because the work of in-house attorneys often consists of a combination of legal and business tasks. *See Abiomed*, 2017 WL 11625640, at *3. "[T]he rendering of business or technical advice unrelated to any legal issues" is not protected by the attorney-client privilege or the work product doctrine. *United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (citing *Pacamor Bearings, Inc. v. Minebea Co. Ltd.*, 918 F. Supp. 491, 510-11 (D.N.H. 1996)). Nonetheless, as long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely because it also dealt with matters that might more fairly be characterized as business matters. *See id.* (quoting *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000)).

Communications between in-house counsel and the corporation's employees are protected by the attorney-client privilege when those communications are intended to help counsel provide legal advice to the corporation. *See, e.g., Kinzer v. Whole Foods Market, Inc.*,

Civil Action No. 20-cv-11358-ADB, 2022 WL 355777, at *1 (D. Mass. Feb. 7, 2022) (quoting *RFF Family P'ship, LP v. Burns & Levinson, LLP*, 991 N.E.2d 1066, 1071 (Mass. 2013)). Thus, McClellan's communications with Castagra employees for purposes of assisting with the preparation and content of the company's responses to discovery requests are privileged communications. *See Equal Emp't Opportunity Comm'n v. Tex. Roadhouse, Inc.*, Civil Action No. 11-cv-11732-DJC, 2015 WL 14031521, at *4 (D. Mass. Dec. 2. 2015) (finding that the attorney-client privilege protected employee communications directly with in-house counsel made to prepare for litigation and communications among employees by which they gathered data that in-house counsel had asked to prepare for litigation). Questions about McClellan's strategy in responding to USR's written discovery requests would be a request for "[c]ounsel's mental impressions and trial strategy [which] 'enjoy nearly absolute protection from disclosure' under [Fed. R. Civ. P 26(b)(3)]." *Id.* at *3 (quoting *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 634 (M.D. Pa. 1997)).

As to a possible sale of Castagra, legal advice from McClellan to Castagra's corporate officers concerning a sale of Castagra likely would be privileged; business advice concerning such a sale might not be privileged. The line between legal and business advice would be difficult to draw. Similarly, communications about revisions to contract and warranty documents likely would be privileged to the extent McClellan was offering legal advice and would not be privileged to the extent the advice he offered could be characterized as business advice. Again, the line between legal and business advice would be difficult to draw. Information about a potential sale or changes to standard contract and warranty documents might or might not be relevant to claims based on a roofing project completed in 2021. The court has no doubt that permitting USR to depose McClellan concerning a possible sale of Castagra or revisions to

9

Castagra's standard contract and warranty documents would indeed "spawn[] litigation over collateral issues related to assertion of privilege, scope, and relevancy.'" *Bassett*, 2024 WL 3416221, at *2 (quoting *Sterne Kessler Goldstein & Fox*, *PLLC*, 276 F.R.D. at 382.).

In any event, information about any plans for a sale of Castagra, at least on the record now before the court, appears to be obtainable from a source other than McClellan, that being Castagra's Rule 30(b)(6) witness (Dkt. No. 56 at 5). Information about recent changes, if any, to contract and warranty documents might or might not lead to the discovery of admissible evidence, but, again, USR has not shown that McClellan is the only possible source for evidence about recent changes Castagra might have made to standard contract and warranty documents. That the information USR seeks to elicit from McClellan "is reasonably discoverable elsewhere" *Bradley v. Wells Fargo Bank, N.A.*, Civil No. 12-cv-127-PB, 2015 WL 12856553, at *3 (D.N.H. Sept. 21, 2015), is another reason to grant Castagra's motion. *See id.*, *see also, e.g., Abiomed*, 2017 WL 11625640, at *3.

USR may ultimately be able to show that, to prove its claims, it must take McClellan's deposition. At this point, however, USR has not acknowledged or addressed any of the *Shelton* factors. In view of the questionable relevance of some of the information USR claims it would seek from McClellan, the difficult privilege and scope issues that will inevitably arise in connection with any such deposition, and the fact that USR has failed to show that the information it claims to need from McClellan is not available from other sources, the court grants Castagra's motion for a protective order prohibiting McClellan's deposition. This order is without prejudice to USR moving for leave to take McClellan's on a showing that addresses and satisfies the *Shelton* factors.

IV.     Conclusion

For the forgoing reasons, Castagra's Motion for Protective Order (Dkt. No. 56) is GRANTED.  This order is without prejudice to USR filing a subsequent motion to compel McClellan's deposition on a showing that complies with this Memorandum and Order, including the nature of the inquiry USR proposes to direct to Castagra's in-house attorney.

It is so ordered.

Dated: September 11, 2024                        Katherine A. Robertson
                                                 KATHERINE A. ROBERTSON
                                                 U.S. MAGISTRATE JUDGE